Thank you, Chief Judge Kaczynski, and may it please the Court, my name is Andrew Pincus. I represent the Chamber of Commerce, the amicus, in this case. To avoid duplication, Mr. O'Connell and I have divided responsibilities. I'll address the broader legal issues, the impact of Concepcion and other Supreme Court decisions, and Mr. O'Connell will address the case-specific facts and circumstances that may make it unnecessary for the Court to reach those broader questions in this case. In our view, there are two related but distinct questions before the Court. First, whether California may place all claims for public injunctive relief off-limits to arbitration. And second, if such claims are arbitrable, whether California may refuse to enforce an arbitration agreement that precludes public injunctive relief benefiting third parties. And I'd like to start, if I may, with the first question. California has said in the Cruz-Broughton cases that claims for public injunctions as a category are not arbitrable. And that is precisely what the FAA prohibits, as the Supreme Court said in Concepcion. When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward, the conflicting rule... It doesn't sound like a type of claim, it sounds like a type of remedy. Well, it's... Just to point out the obvious, so you can talk about it. I think that's truly... I don't think, you know, I'm not an expert in California law, but I don't think there is a claim or cause of action under California law for public injunction, right? That's a remedy you can get for certain kinds of claims. It is, Your Honor. So why isn't this different from Concepcion in that way, and therefore... I mean, maybe it's analogous, but I don't know why it's not sufficiently different just to raise a question we can talk about. Obviously, I'm happy to talk about whatever the Court would like to talk about, Your Honor. Well, it's just me. I'm not speaking for anybody else, but you said, you know, this... And since the words you use are not the words that apply here, I'm... What the Court has said is categories of claims, and it's really included claims for specific relief. In the Mastro Bono case, which was an older case that dealt with the availability of punitive damages, the question there was whether a New York rule that prohibited arbitrators from awarding punitive damages was preempted by the FAA if the parties themselves had provided for punitive damages in their arbitration agreement. And what the Court said is, yes, that rule is preempted. If the parties choose to provide for the award of punitive damages in their arbitration agreement, New York law can't stand as an obstacle to that. So we think that... I share the Chief's concern about remedies, but I'd be very interested in your view as to what Concepcion means. Because you have a plurality of four people, and then you have Justice Thomas that went off on an entirely different basis, which is basically a referral back to the FAA itself. Is Concepcion a controlling precedent? And if so, why? It is controlling, Your Honor, because Justice Thomas joined the majority opinion. He did write separately, but he said... Okay, then isn't it based on... Under Marx, isn't it not then based upon the reasoning, the narrowest reasoning that all of the justices agreed on? I don't think so, Your Honor, because I think that applies if there are separate opinions. And here, Justice Thomas joined the majority opinion. The opinion written by Justice Scalia... He joined the result, but he didn't join the reasoning. No, he joined the opinion. He joined the opinion. The report of the decision says that Justice Thomas joined the opinion. He wrote separately, concurring to elaborate on his views. But in the beginning of his concurring opinion, he said that he was joining the majority opinion, but he would provide some further emphasis on his particular view. So it's your position that Justice Thomas's separate writing did not distinguish his view as to how he got to the overruling of the Discover Bank case? I think he provided an explanation of how he got to the same legal rule that the majority adopted, but he joined the majority opinion and no... I'm looking for the words in Justice Thomas's opinion that says, I joined the opinion. Where is that? It says, Justice Thomas concurring. And then on the third paragraph, he says, I write separately to explain how I would find that limit in the FAA's text. If you can find me the... In the very last paragraph before Roman numeral one... Ah, there you go. It says, I reluctantly joined the court's opinion. Got it. Mr. Pinkas, is this really a claim for public injunctive relief? As I understand it, what the plaintiffs really want is, they want a court order that says they don't have to repay key bank. The school's out of business, so what are we protecting the public from? Well, I fully agree, Your Honor, and as we discussed in our brief, this really isn't a public injunction case at all. So do we even need to reach the question as to whether or not Cruz-Broton exception exists? I think there are a number of grounds that the court can decide this case on. One is that there's no serious claim for a public injunction here. And Mr. O'Connell, I think, is going to discuss that in more detail. But we certainly take the position that this is a claim about vindicating the plaintiff's own rights and, therefore, is not really a public injunction claim at all, and there's no prospective relief provided. There's no occasion to provide prospective relief. Recognizing that Mr. O'Connell is going to address that issue later, let me ask you whether it's your position that the Concepcion rule bars any state rule that would prevent the arbitration of a public injunction claim? What if health and safety were at issue? Assume I had a contract with a water company that said I'd arbitrate any claims with them, and I found out that there was poison in the water. Would I be limited to arbitrating my particular claim against the water company under the Federal Arbitration Act under that circumstance? Yes. Our position is, and what Concepcion says, is even if there is a good policy reason for the state law rule that tries to displace the principles of the FAA, that that state policy has to give way. Here, the policy, both in Concepcion and in this case, really is a policy about using lawsuits to vindicate third parties' rights. And the Supreme Court in Concepcion said we are not going to, California has a policy of providing class remedies, of requiring class remedies, because it wants to be a claimant to be able to vindicate third party rights. It said that's not enough. And in this case, the same thing. That's a broader position, I think, than you need to take. Is it your position that all public injunction claims of no matter what stripe must be arbitrated if there's an underlying arbitration agreement, or can a state carve out a small category of those that it says can't appropriately be done through arbitration? Well, the rule of the Supreme Court adopted, Your Honor, is quite categorical. Obviously, the issues can be brought to government enforcement officials. There are lots of ways to make those problems known. But what the court has said is with respect to the FAA, it precludes states from requiring procedures that are inconsistent with arbitration. And I think the public injunction really is the equivalent of a class arbitration proceeding. It requires class procedures under California law. Prop 64 requires class certification. So this is really class arbitration in the same way as Concepcion, because what's sought here is a class-wide injunction. Certainly contract offenses are preserved. You would agree with that? Generally applicable contract law, yes. And would unconscionability be a generally recognized defense in California law? If the unconscionability rule applies across the board, it's not a rule that singles out arbitration, yes, Your Honor. Well, that being the case, would we decide the unconscionability here, or if we agreed with you that this should go to arbitration, who decides that issue? Typically, unless the arbitration agreement specifically allocates to the arbitrator the question about the enforceability of the arbitration clause, then that is a question for the court. As long as the unconscionability is focused on the arbitration clause and not the broader contract. I'm sorry. No, go ahead. If the unconscionability claim is targeted at the arbitration clause, then it would be a question for the court. As happened in this case, there was an unconscionability claim, and the panel rejected it. Well, now the district court also granted a motion to dismiss on preemption, on the holder role in the NBA. If the district court correctly granted that motion, could that decision be affirmed without reaching the motion to compel arbitration? We're really in the case on the arbitration issue. That's really a policy issue, but I think it would be hard to reach that because I think, as the panel said, the legitimacy of that ruling by the district court turns on whether the district court had jurisdiction of the underlying matter, and that turns on whether the NBA. So if it should go to arbitration, then the arbiter would decide that. We all agree. Yes. Going back to unconscionability, do you see any intersection between public policy and unconscionability? The statute cites contract law defenses such as duress that relate to the making of the contract, and in fact Justice Thomas' separate opinion focused on that as his issue, as what he thought that the savings clause was limited to. I think the problem with public policy is that public policy is often targeted on specific kinds of contracts, and so it's awfully hard to say a public policy rule. It's very easy to characterize a legal rule as broadly saying something is against public policy, but it's targeted on arbitration agreements. So I think there would have to be a lot of focus to determine whether a rule that was justified by reference to public policy and that focused on arbitration agreements was really a rule that discriminated against arbitration. That's kind of what the court left open in the Marmot Health case, in effect, wasn't it? Well, no. In Marmot, what the West Virginia court had done was to justify its rule on the basis of public policy, and the court said no, there's no public policy. The public policy you've enunciated is targeted on arbitration. If you have some other broader public policy rule, we'll see, but they set aside the ruling based on the arbitration-specific rule. Do you believe that the Italian colored restaurant versus American Express travel-related services code that the Supreme Court, on which it's granted cert, has enough of a bearing on the issues in this case that we should withhold any ruling until we know what the Supreme Court does with that case? Well, let me say a couple of things in response to that question, Your Honor. First of all, I think the court can dispose of this case because, as we discussed in our brief, the Vindication of Rights Doctrine doesn't apply to state law claims, and so there's no reason to hold this case for American Express because whatever gets decided in that case about how federal claims are handled, it won't apply to a case under state law. The other thing I think that's worth mentioning about American Express, is that's a case, again, discussing the Vindication of Rights Doctrine, on which the other side relies, where the question is whether the plaintiffs can vindicate their own rights. That's the question in the case that the Supreme Court is going to decide. There's no contention in that case about vindication of third-party rights, and all we're talking about here, when we get to the second question, about whether the arbitration agreement can preclude, is enforceable even if it precludes public injunctive relief, is whether it's permissible for California to refuse to enforce an arbitration clause because it doesn't provide a remedy for third parties. That's not a question in American Express. It's never been a question in any of the Supreme Court's vindication of rights cases, all of which, of course, also rely on federal law, but also are about the party's ability to vindicate its rights case. So American Express just really has no relevance to this case from your perspective? I don't think so, Your Honor. Counsel, let me ask. I don't understand how the policies of the FAA are going to be frustrated if we force the plaintiffs to arbitrate their individual claims, and we reserve for the court just the supervision, essentially, of this public injunctive relief. Maybe you can address that. I'm sorry, Your Honor. I want to understand your question. The notion is that the parties would arbitrate their claims, and then there would be a quest. The case would come back to a court, and the court would decide on the public injunction issue? Yeah. I think that's what Cruz and Broughton anticipate, that the plaintiff's individual entitlement to their own personal relief would be subject to arbitration. The only thing that the court would be involved in is this forward-looking, purely prospective injunctive relief. So there would be two separate cases going on simultaneously? Well, if the defendant lost in the arbitration, the plaintiffs could obviously rely upon that victory in the arbitration to get the court to issue injunctive relief. Although, Your Honor, I think the way that the cases have interpreted this, and the Supreme Court discussed this a little bit in the KPMG case that it decided two terms ago, is if there are claims that are arbitrable and claims that are not, then the arbitrable claims go to arbitration. Let's say I don't agree with you that there are separate claims. There are just different forms of relief, as the Chief suggested at the outset. Address it in that context. Okay. Certainly. I think the starting point is, as I said, the Mastrobono case, which says that even claims for a specific kind of relief can't be placed off limits to arbitration. And I would just add to that, that concepcion would have little meaning at all if the problem was that the Discover Bank rule wasn't aggressive enough, and that if California had a rule saying class action claims can't be arbitrated at all, that would be enforceable. And that's sort of where the plaintiff's position is. I don't view the public injunctive relief as a class action device. In fact, the relief would be most appropriate when there is no defined class that could be carved out. For example, just an order forbidding KeyBank here from continuing to engage in deceptive practices that are going to apply to people whose identity we don't even know about right now. I think the problem, Your Honor, is it is a class claim because Prop 64, in amending the 17203, which provides for public injunctive relief, requires that a class be certified for such relief to be granted. So it is a class action under California law, and has those same characteristics. And just to quickly answer your question, because I'm eating into Mr. O'Connell's time, the reason for the rule, the reason that it should be treated the same as Concepcion is that it creates exactly the same problem that Concepcion identified. What is essentially a class arbitration, albeit one focused only on injunctive relief, that has all of the things that the Supreme Court focused on. First of all, complexity. There would have to be a class certification proceeding before the arbitrator. So that will be slow and not streamlined. Second of all... I don't see why the class certification would happen during the arbitration. The premise is that the person is seeking individual relief, and when he is after the public interest injunction, now maybe that has to be class, but that's going to be in the court. Well, Your Honor, for the claim to be severed in that way, there would have to be some power, there would have to be something that gives the court the ability to say California can place the class arbitration, what is essentially a class injunction claim off limits to arbitration. I don't see in the law anything that would allow that distinction. And I think the problem is, without being able to draw that line, which the FAA I don't think permits, because it's a pretty strict rule about things have to be submitted to arbitration, I think that process just... there's no basis for setting up that kind of process. If we were to agree with your position, and I'm just saying this hypothetically, and overrule Broughton-Cruz, that would just apply in the Ninth Circuit though, right? So California still... I mean, it applies in this case. That would apply in the federal courts, and obviously California courts... In California, then they have to... if the California Supreme Court revisits it and says it exists or it doesn't exist, then it would go to the Supreme Court that way. Yes, I mean, obviously there are two separate court systems, and I think this court's decision would be persuasive in California state courts about the intervening impact of the Supreme Court decisions and on the California Supreme Court, but ultimately that would be up for the California Supreme Court. I want to reserve whatever is left of our joint time for rebuttal and now. Thank you. May it please the Court. Scott O'Connell, Sarah Andre, Dan Dean on behalf of KeyBank. To answer the question put to my colleague, Mr. Pincus, you do not need to reach overturning the Cruz line of cases in this case, and for the fundamental reason we have a valid and binding arbitration agreement which includes the waiver of any representative status. There is no claim here, or at least the panel rejected any claim of unconscionability, which would be the way to get out from underneath an onerous contract that is improper, but right here we've got plaintiffs who can get complete relief in arbitration for what was fairly described as debt forgiveness. These are students who took loans out to attend a school, and the two representative plaintiffs got everything they were entitled to under their bargain, more than the 175 hours. It is the equivalent of any one of us going to law school, failing the bar exam, and then seeking to get money back or debt relief from the lender. Put aside the merits of the case for a second, which if you're right about this case being arbitrable, we shouldn't be reaching, should we wait for the California Supreme Court to deal with the Asconia case? I'm not familiar with that one, Your Honor. I'm not sure of the facts of the case. It's a case in which the Court of Appeal dealt with FAA issues, considered some Brown and Cruz issues, and the Supreme Court granted a review. I would say no. In the face of this case, Concepcion is controlling with regard to the fact that 17200 categorically says public injunctive relief cannot be arbitrable. That is a blatant violation of the first prong of Concepcion that says, no matter the well-intended meaning of any state law, it must yield under the Supremacy Clause if it has a categorical rule against arbitration. You sounded as though you were answering my question, but I'm not sure you quite answered the question that I asked, or at least intended to ask, and that is, is the sort of relief sought here, the injunctive relief sought here by these plaintiffs, is it public injunction relief within the meaning of Brown and Cruz? No. I don't think so. They waive that. They have waived any representative capacity, and I would say it is a class action by another name because of Prop 64. All of the formalities necessary to grant public injunctive relief under the laws that exist in California since 2006 requires, effectively, a class action. And so these individuals can get debt relief by injunction or just simply debt forgiveness by an award, or they can get an injunction that says, if they're correct, the fact that they've not paid this debt cannot be reported out to some claim service. So how do I get, then, if I'm a plaintiff, how do I get an order forbidding? Let's say your client were continuing to engage today in the exact same conduct that they're challenging. Let's say this flight school was still in business. How do I get an order forbidding you, forbidding your client to continue to engage in the practice? You as an individual under this arbitration agreement cannot get that relief. It's not possible. They have waived any representative right for the public generally.  No, that's not true. Anybody who has signed the arbitration agreement and who has, as a benefit of the bargain that KeyBank made when it lent the money, was that you're going to waive any representative claims, a la concepcion of the Discover Bank rule. And the benefit of the bargain is that will be decided as an individual in an arbitral forum. If another individual of the public or the attorney general decided that there was some public relief necessary, there's nothing about this case that would stop that type of public enforcement. So there still is an avenue. Well, yes and no. I mean, I understand your argument to be that anyone who signs an arbitration agreement can't do that, which means that anybody who's actually borrowed money can't do that because that's a precondition for borrowing money. Correct. So the only people who can complain about your deceptive practices are people who have not actually been the victims of the deceptive practices. Well, I would suggest that what the plaintiffs have articulated here is something broader, some type of Broughton Cruz-style general fraud on the public type of approach. They have not articulated specifically what prospective relief they want, nor can they because the record is clear. KeyBank stopped writing these loans in California in 2005, three years before the school failed. So there is no prospective relief to be had in this case. That goes to the point as to whether or not the relief they seek comes within Broughton Cruz, and I'm tempted to agree with you that it's simply not a public injunction. It's not a public injunction case. That is KeyBank's position. It is artful pleading by plaintiffs who tried four different complaints to get something to fly, and even the fourth complaint, as you know, because of the decision on the merits that has been vacated, didn't state a cause of action. So the point, though, as a matter of policy for this Court to consider is can these individuals get complete relief in the arbitrable quorum? And the unequivocal answer is yes. Counsel, I thought you had conceded that the plaintiffs could get public injunctive relief from the arbitrator. Am I remembering that wrong? No, Your Honor. I mean, well, they can get if there was an action that was prospective. This is hypothetical, Your Honor, because I think the facts don't support it, but we may have argued something like of this nature in our brief, that if there is something to be enjoined, these individuals can get an injunction that pertains to them individually. And that's so that they're not reported to credit? Correct. But it's individual to their harms, Your Honor, not to the public generally. And, of course, there's a real question as to whether a federal court, an Article III standing would exist for an injunction to the populace of California as broadly defined. Of course, you removed the case. I'm sorry? You removed the case. We removed the case, but before, Your Honor, there was any kind of claim for public injunction. But you're right. But your position is that the California court doesn't have that right given the FAA? I think that's how I believe Concepcion applies. So it's really not an Article III issue. It's a statutory issue. Well, but there are unique problems in this court, I would submit, that a state court doesn't have to deal with. And the question becomes how broad can a public injunction be if you're in an Article III court and you don't have the requisite standing that is required in a federal court? Let me ask you this. You have an opt-out provision in this arbitration agreement. If an individual were to opt out of the arbitration clause, which is permitted here, does that mean they wouldn't get the loan or does that mean that they would be opted out and they could go to court and bring a public injunction? They got the loan. In fact, the arbitration provision, I'm going to quote it, says, rejection of this arbitration provision does not serve as a rejection of any other term or condition in the note. So you could opt out and that would be a plaintiff who could potentially go to court and then under the procedures of the unfair competition law try to get a certification and have a public injunction. Absolutely. And there were no opt-outs in this case. There have been opt-outs experienced with this product but not for this school. But the bottom line is, you're right, Your Honor, an individual, if they looked at this arbitration provision and said, I want remedies in court, could have opted out. No consequence on their loan. The loan would have been paid to the school, they could have attended a school, and they would have preserved the right to proceed in court. Going back to the remedies cause of action issue that we kind of started with, with your compadre over there, I gather your position is, and particularly in light of your comments to Judge Watford, that the remedies cause of action distinction doesn't make any difference anymore because Concepcion overruled all of it. Is that correct? I believe Mr. Pincus is right. Mastro Bono dealt with the issue of remedies and Concepcion makes quite clear that you cannot particularize a waiver of arbitration. So you agree with Mr. Pincus, but you're saying the court can decide it more narrowly than what he's saying? That's correct. And so on the narrower ground, you're saying that the court could just tell me exactly how your narrower cause would ride out? Yes, Your Honor. This court could decide that arbitration should have been compelled because there's a valid and enforceable arbitration agreement, which was not unconscionable. The opt-out provision and the merits panel, the three-judge panel, dealt with those issues. So this court would have to decide the conscionability? Well, it's preferable. Otherwise, we'll be back in the district court after being five years. No, if the arbitration is compelled, would the arbiter decide that or would this court decide it? Well, I agree with Mr. Pincus. That's an issue that for this type of arbitration provision is often done by the court. Can you answer what I don't think he really did answer, and that's my question of where public policy might intersect with unconscionability. Can you think of any example? Yeah, public policy. I think there probably are arguments in the nature of duress and procedural and substantive unconscionability that have a very heavy thumb of public policy. I don't have an example in mind. I guess the utility question, which I'm sure was raised earlier, might be of that nature, but I guess the answer is if there is a binding agreement to arbitrate and it's not unconscionable for something that feels like unconscionability because it's a utility or it's a basic right, having access to water and those kinds of things, you would be in an arbitrable forum. Now, that doesn't stop a regulator or some other enforcement action from bringing some type of public relief for that individual and for the public generally. Is venue a public policy issue? Because everybody, of course, has dropped the notion that these poor individuals would have to run to Ohio to litigate their case. Do you see that defense, which could result in a severed arbitration agreement, sever that clause out, is that in the nature of a public policy that California residents shouldn't have to go to Ohio to get a consumer claim? I don't think California, under Concepcion, can articulate a policy that trumps the FAA. And that's just a supremacy clause issue. Now, the question becomes whether or not it is really an issue of unconscionability. And I think the hypothetical you just put on the table could sound in an unconscionable basis for unconscionability, that it requires something that is in excess of what a court would require or it would be essentially the basis upon which an individual would say, I'm going to opt out. If I read this and I have told you above my signature that I have read it, even if someone told me not to and I'm signing it, within 60 days I can simply tell you I want my day in court and I want it here in California and they opt out. But that's the remedy. Can I follow up on a question Judge Fletcher asked a moment ago? I take it your position is that as a matter of California state law, this case doesn't fall within the Broughton-Cruz exception, am I right? I agree. So one way in response to what Judge Callahan asked, that we could dispose of the case narrowly, would be to decide a state law issue that even in California state court, the state Supreme Court wouldn't have recognized this as a public injunction claim. You could find on the record before this court that there is no basis for a public injunction. And if that's what the case turns on, should we certify that question to the California Supreme Court? I don't believe you need to. I think you simply can say that they've waived any representative. No, I'm asking a very different question than your argument. My question is, if this is not a public injunction claim on its face, because it only seeks relief that would benefit these particular individuals, it wouldn't fall within the California public injunction exception, would it? As a matter of state law. If I understand the question, if they can get to it. I'm sorry, Judge, I'm not following the question. Sure. California Supreme Court said not every kind of case falls within our public injunction exception. And in Bounton there's a footnote that says something like, look, if you're really only seeking relief for yourself, that's not a public injunction. So in my mind, I think as Judge Fletcher's question suggested, this case could be so characterized. But that would require us to decide a matter of California state law, which is if this wouldn't fall within the public injunction claim in the first place. Your Honor, may I answer? I'm out of time. You must answer. Okay. Thank you. You're certainly not out of time, so long as there are questions. Thank you, Your Honor. You're not getting away. So I don't believe it requires a certification because what you have here, you're right that here there is complete relief for individuals making essentially individual claims. It's dressed up with the notion of some type of prospective relief, but it's not articulated and it's not part of the record. I guess there is a case, not this one, where you might want to certify that question and say if indeed the individual is only essentially, and we're looking past the pleading, for individual relief, does that fall within or without of the Braz Cruz public injunction exception? I just have difficulty putting this case into that pattern because there is no contention really that there's any future harm because this bank stopped making these loans three years before the school failed. Thank you, Your Honor. Okay. Thank you. We'll hear from the other side. May it please the Court. My name is Jim Sturtevant, and with me are Andrew August and Kevin Rooney on behalf of the plaintiffs' appellees. I think the question before the Court, the Broughton Cruz doctrine, should be analyzed in connection with the primary purposes of the Federal Arbitration Act. The primary purpose of the Act was to ensure the private enforcement of agreements according to their terms. It was to put contracts with arbitration clauses on an equal footing with other contracts, not to elevate arbitration contracts or contracts with arbitration clauses to a level unintended by the FAA. The FAA never intended to authorize arbitrators to issue or implement broad injunctive decrees. Counselor Sturtevant, why shouldn't we bifurcate and simply tell the district court compel arbitration with regard to the claims that are individualized and then let the district court see where things stand after the arbitrator enters his award as to whether or not further injunctive relief is necessary? Because, Judge Tallman, there are no individual claims for relief in this case. The only prayer for relief in this case by the plaintiffs is a public injunction to restrain three practices of defendant Key Bank. No, the plaintiffs want an order relieving them of their $50,000 to $70,000 obligation to repay Key Bank, and they want an order directing Key Bank not to tell credit reporting agencies that they defaulted on the loan. Isn't that individualized relief that is specific as to each of the borrowers? No, that's a remedy that the plaintiffs' appellees in this case are seeking on behalf of themselves and on behalf of all other students. But the public injunction, more squarely put, is the one that Judge Trott framed in the panel's opinion in this case. I don't understand what you just said. Judge Tallman, I ask you, they're trying to get out from under the debt. They have a debt and they want to have an order saying, no, you don't owe anything. Now, how is that not an individual claim? They're already obligated to pay that, so the only relief they seek here, Judge Kaczynski, is to prohibit Key Bank from any enforcement efforts against them. To prohibit Key Bank from... What does that mean? They owe the money, but they can't have it enforced? Some of the students undoubtedly have paid much of the money or all of the money, but it is to restrain Key Bank, based on the proof that would be adduced at trial in this case, to restrain them from making adverse credit reports to credit reporting agencies, from engaging in any enforcement actions, but most importantly... Would Key Bank be able to collect the rest of the money? Not if that public injunction is granted, no. What's the difference between an injunction and a declaratory judgment here? Basically, you want a declaratory judgment that they don't owe the money, right? Yes, we want a declaratory judgment as part of the relief that the acts and practices that Key Bank engaged in violated federal law. So what's your answer to Judge Tallman's question? Why can't they litigate the question of whether they get that kind of order? And we'll see where we stand as to anybody else. Because that's not the relief that they're seeking. With respect, Judge Kuczynski, they are seeking an injunction to prevent Key Bank from engaging in false and deceptive acts and practices with respect to consumer credit contracts involving purchase money loans. That's the public relief, but they are also seeking to keep Key Bank from enforcing the judgment they owe against them. I mean, the debt against them, right? They are seeking injunctive relief to prevent that with respect to themselves and all other students. That's Tallman's question, and I'll give you one more chance to answer it. I'm interested in the answer. If you don't want to answer it, that's cool. The question is, why can't they go ahead and litigate that, the question of whether or not their debt gets collected, and then after that's done, we can look and see what happens as to the rest of the world. I do not believe that an arbitrator can issue an injunction respecting the plaintiffs and the class, and there is no authority... No, no, no, just the plaintiffs. Why can't they get the arbitrator to issue an order just as to name plaintiffs? And then after that is ended, if it's ended, we can see what happens as to the rest of the world. An arbitrator does not have the authority to issue an injunction, to superintend it, and to manage it. So our position in this case is that all of the relief that the plaintiffs are seeking, as articulated in the panel opinion and in the third amended complaint, is in the form of public injunctive relief. Does an arbitrator have the ability to look at the merits of your claim and reject them? In other words, can the arbitrator do what the district court did in its summary judgment, which say your claims just do not state a cause of action? If this case were compelled into arbitration, then the arbitrator would have the power to make that liability determination. And if the arbitrator made that liability determination, wouldn't that end the public injunction claim of anybody who is a plaintiff in this case? That would end the public injunctive claim. So let's go back to Judge Tolman's question. Let's go back to Judge Tolman's question. Why don't you go arbitrate your individual claims first, and then let's see what happens. What's wrong with that? Because that would eliminate a substantive right. Well, it would only eliminate a substantive right if you're correct on the merits. If your case is a loser, it wouldn't have eliminated any substantive rights for anybody. So why not first arbitrate the individual claims, see how they come out, and then we'll worry about the public injunction stuff. But, Judge Hurwitz, that's putting the cart before the horse, because the first question that a court must determine in this case is whether or not this case should be litigated or arbitrated, whether or not the claims in this case, the relief sought by the plaintiffs, are subject to the FAA or not. It is our position that there is an inherent... But what's wrong with putting the cart before the horse? Okay, so it is putting the cart before the horse. So that's how it's normally done. Why not do it differently in this case and avoid the whole question of public injunction? You know, we've got a... The only... So we have some unusual carts. So what? Let me take you back to... Let me take you back to Broughton and Cruz, if I may. If the claims in this case were a mix of monetary relief and injunctive relief, under Broughton and Cruz, the monetary claims would be arbitrated, and they would be arbitrated first. But there aren't any claims for monetary relief in this case. There's no relief sought that is for restitution under the UCL. And under the Broughton and Cruz doctrine, the dividing line is a public injunction, a broad injunction going beyond the individual parties before the forum or those individuals seeking monetary relief for themselves. What if we accept Judge McEwen's characterization of your claim as not really being a claim for injunctive relief? It's just a declaratory judgment action. What they really want is an arbitrator award that declares that they don't owe any money under the promissory notes, that the notes are unenforceable, and that the key bank can't tell the rest of the world that they failed to repay the loan. No, from day one in this case, the complaint and the amended complaints in this case have expressly sought public injunctive relief. In your first complaint in state court, I thought Mr. O'Connell said that you didn't ask for injunctive relief in the initial complaint. We asked for injunctive relief in the second amended complaint and in the third amended complaint. So the answer is you didn't ask for it when you filed the action in state superior court. Is that correct? I'm looking at the third amended complaint. That's not my question. My question is what did you ask for in the original complaint that was filed in the superior court? I apologize, Judge Coleman. I can't answer that question. I don't recall the exact prayer in the original complaint, but I can refer you to the second and third amended complaints that were filed and which have been litigated. After the case had been removed to federal court. Yes, those complaints were filed in federal court. Let's take the same thing but turn it a little bit differently. Instead of calling it declaratory relief, if you took your prayer and you took out the language about the proposed class, you would agree, I gather, that that would not be a public injunction. Is that correct? After Prop 64, a plaintiff can only seek public injunctive relief on behalf of the class. You're talking about plaintiffs and the proposed class. So I'm just saying if you take out the reference to the proposed class, you would agree, I gather, that that's just an individual complaint. I think my colleagues would properly characterize it as an effective declaratory relief action. But do you agree if you take out the class concept, then all it is is their individual attempt to clear their names, relieve themselves from debt. It's the cart before the horse, as it were. Yes, but the substantive right that they have, Judge Smith, is the right to bring an action under the unfair competition law to seek broad injunctive relief to restrain or prohibit a defendant from engaging in illegal, unfair, or fraudulent business acts or practices. Let's look at the reality here. It refers to the notes. It's a defined term. We now know from what's been said both by you and the other side, I gather, that this bank is no longer issuing notes of this type. They're just not doing it. So you've got your plaintiffs and you've got the proposed class. You're talking about the need for a public injunction. If they're not issuing the notes anymore, they're just not out there, then you can't possibly get relief for the proposed class, can you, even if there is one. They have a right to seek public injunctive relief. That's a nice term, but the reality is here it doesn't really mean anything, does it, because the term notes, as defined in the third amendment complaint, really only applies to your clients. So far as I know, Your Honor, KeyBank is still engaged in vocational school lending, and so the public injunction being sought in this case would prevent them from enforcing or paying money to schools where the contract between the school and the student doesn't include the Holder Rule and federal law unambiguously. That's the state claim. You're getting away now from the Broughton-Cruz problem that we're wrestling with. That deals with the state claims. Is it not the Holder Rule? That's the state claim issue. No, the Holder Rule is a federal requirement. I understand that, but you're suing under the UCL on that claim, are you not? We're suing under the UCL, and the predicate for the relief sought under the UCL is not a state statute or a state regulation. I understand that. It's a federal statute and a federal regulation. I understand, but you're talking about whether those state claims survive the district court, and the panel didn't really get to it because they dealt with it in another way. We're really talking about the preemption issue here. What I'm struggling with, frankly, is how you have under any characterization a public injunction that is left after you analyze what the facts are in this case. It's really only your clients that are getting relief. You may say the proposed class, but I'm struggling. Where does a proposed class come from in this case? If you say for a moment that we don't know yet, how about what my colleague has suggested, which is let your clients go to arbitration, take care of their deal, and then if there's something left over on a public basis, then you can proceed from there. Does that make sense? I think that would eliminate, which the FAA does not countenance, it would eliminate their substantive right to enforce the fundamental public policy expressed in the UCL. Because they're not seeking any monetary relief for themselves, the Broughton-Crews doctrine... Well, they really are, but just in it by a different name, is it not? I don't believe so, Your Honor. They're saying they don't have to pay, and they don't want their credit to be smudged. They're seeking... That's the same thing as getting relief of not having to pay in the first place in terms of a monetary damage, right? Well, that's not what they're seeking, Your Honor, with all due respect. Let me turn for a moment to the vindication rule. Let me ask you a different question altogether. Could California eliminate the authority of arbitrators to issue any injunctive relief? I'm sorry, Your Honor? Could California eliminate the authority of arbitrators to issue any injunctive relief? So in all claims, they can arbitrate money all they want, but no injunctions. Could California do that? Consistent with the arbitration act? I don't know whether California law could do that, but that's not the question in this case. No kidding? The question in this case... I know it's not the question in this case. That's why I said it's hypothetical. Could California do it? I don't know. If you don't have an answer, you don't have an answer. I think the question would be framed this way, and it would be framed... Why don't you answer the question I framed? You may have a different question, but this is my question. Could California simply say, look, arbitrators can arbitrate all sorts of claims, all sorts of causes of actions, all sorts of disputes, but they can't issue injunctive relief? That's something for courts. I think my answer would be this. Why don't you try with a yes or no? Start with a yes or no and then give an explanation. Do you think it would be yes or no? I don't know. It's not like being in front of an optometrist. The question is whether... You know, when you read the opinion in this case, it's going to be like being in front of an optometrist. So, you know, it's going to say yes or no to you. So, I mean, it's either yes or no. Can it do it? Can it not do it? I mean, you may not think it's relevant, but just assume for a minute that I think it's relevant. The question is whether... So are you going to help me out? Are you going to give me a view of it? I'm trying to do that. The question is whether the individual, under the facts and circumstances of the hypothetical, which you didn't flesh out to me, can vindicate his or her rights, substantive rights, in the arbitral forum. If, like the plaintiffs in conception, could vindicate their rights against... I'm not talking about any individual plaintiff. California just passed a law that says, look, arbitrators can issue... can keep doing what they're doing, but they can't issue injunctive relief. Can a state do that? I don't think that the state... You don't have the answer. You don't want to take a... I don't think the state under the FAA could take away a fundamental statutory right, state or federal. So I don't think in a case in which the law authorized an individual to seek an injunction for himself or a public injunction, that that substantive claim could be taken away. Oh, no. Maybe it would take away... Under the FAA. It would take away the substantive claim. What is the bottom line of your lawsuit? What are you trying to gain? Who are you trying to protect? We're trying to protect the plaintiffs and the students who went to Silver State, and we're trying to protect other students who have relationships with KeyBank, where KeyBank is violating federal law by not including the holder rule in the contract between the school and the students. That's the broad public injunctive relief that we seek in this case. All right. That's the injunctive relief. If you set that aside, would you have a problem with arbitration? That's the only relief that is being sought in this case, Judge. I'm just asking you that question. Mr. Ravan, I've known you a long time. You're really at a loss for an answer. I mean, why are you here? What are you trying to accomplish? Who are you protecting? We're protecting the students that went to Silver State, and we're trying to protect other students who have relationships with KeyBank, where KeyBank is violating federal law by not including the holder rule in the contract. So let me ask you a question, a follow-up on that. With respect to protecting the students who went – I'm not through. I'm sorry, Judge. Each of those students then would have – would they have a problem with arbitrating their particular claims, seeking injunctive relief one by one? I don't know. I haven't talked to all the students, Judge Pragerson, but the claim is framed in this case by the Third Amendment complaint, which is the one before the court, seeks the broad public injunction. It doesn't seek an individual injunction for each student or each plaintiff. It doesn't seek any monetary relief for each student or each plaintiff. It seeks this broad public injunctive relief authorized by the unfair competition law, which in this case brings in KeyBank's violation of a federal regulation. Not a state statute, but a federal regulation. Do you have any plaintiffs? What was your – what was the injunction? How would that read? It would read just as Judge Trock framed it in the panel's opinion, to restrain KeyBank from engaging in false and deceptive acts and practices with respect to consumer credit contracts involving purchase money loans because consumer credit contracts, by definition, are the loans in this case in the student loan agreement. That's how the public injunction would be framed. You've answered all my questions. Thank you. And thank you, Judge Pragerson. Let me just ask, because your last question suggested there were two groups of people that you were looking to protect through your public injunction request. One were the people who had dealt with this particular helicopter school, and the other was the group of people who were dealing with KeyBank in the future that might face a similar situation. Is that a fair summary of what you said? Yes. With respect to the group of people who have already dealt, are you seeking a public injunction in your view? Yes, we're seeking an injunction with respect to this class, which is numerous enough to be certified. About 100 people? Yes. Okay. With respect to the future group, is there any evidence at all that KeyBank is engaging in the practice that you now claim? You say that they're still dealing with these types of contracts, but that's not the question. The question is, as I understood your claim for relief in this case, it was because KeyBank was intimately involved with the marketing and et cetera of this program. Is there any evidence that there exists another class of people similarly situated to those within the named class in this case? There is evidence that KeyBank is engaged in a continuing course of conduct with respect to funding vocational school. Yes, but that's a different question, and you've answered a different question than the one I asked. The question is, the bad thing that you said that KeyBank did was in effect collaborate with these people in structuring the contracts and knowing that they didn't have holder language in them. Is there any evidence that KeyBank is continuing on that course of conduct in this record? I believe there is, but I can't. I will be able to get it to you in a minute in the excerpts of record. I believe it's alleged squarely in the third amended complaint, and it's not simply as in this case that KeyBank and Silver State negotiated to ensure that Silver State's contracts didn't include the holder rule. It was that after that, although those contracts violated the holder rule in federal law, KeyBank continued to pay those loans. In other words, to pay the school on those loans. And it's our claim in this case that that was illegal, and that's part of the public... Okay, so let me ask the question one more time, just so I'm clear. You're contending that there's evidence in this record that KeyBank is continuing to pay other institutions on loans that violate the holder rule, in effect? I believe there is. If not evidence in the record, there are allegations in the third amended complaint which amount to that. But this case... This was a summary judgment case below, wasn't it? No, Your Honor. There was first the motion to compel arbitration. Right. And then the motion to dismiss the third amended complaint. So that's the extent of the evidentiary record, was particularly on the motion to compel arbitration, which didn't go to the merits of the case. Mr. Sturtevant, as you now frame your claim, you raised a new issue for me, which would be standing as to this group of people who is not your clients that went to helicopter school. Leaving that aside, which of course we would have to look at standing in every case, I want to go back to Concepcion and try to understand. You keep talking about their substantive right, and Concepcion uses words like, well, notwithstanding state substantive rights, which then I think puts you into this Marmot case that I discussed with the appellants. And in Marmot, the West Virginia court said, well, the Supreme Court said West Virginia had an alternative way to look at this, but the alternative way was public policy. And when it sent the case back to the West Virginia court, they said that the court has to consider whether absent general public policy, the arbitration clauses are unenforceable under state common law. What that suggests to me is that this public policy basis which you argue doesn't fall, at least the Supreme Court suggests, under this unconscionability. But I would appreciate your take on the Marmot case and what the court is saying vis-a-vis what happened in that West Virginia nursing home case. My understanding of the Marmot case is this, Judge McKeown. West Virginia law prohibited the enforcement of any arbitration clause in any contract between a resident in a nursing home and the nursing home. It therefore restrained any claims by any nursing home resident in arbitration under a typical claim for personal injury, for example. And why isn't that equivalent to California saying that public injunction cases can't go to arbitration? It's a class of claims. Because it's not a public injunction case. It's a claim for relief under a state statute that authorizes an individual to seek relief on behalf of others. A class that transcends into a public injunction because the injunction goes downstream from the simple parties before it. And that's the injunctive relief that can't be issued, can't be administered, can't be implemented by an arbitrator. That's our position in this case, that there is an inherent conflict, not between resolution of all claims for monetary relief under the UCL, but simply the public injunction can't be issued by the arbitrator. And because you need a class for public injunction and these individuals waive class rights, why doesn't that put you back into Concepcion? Because the nature of the injunctive relief that we're seeking is not only goes with the class, but transcends the class. In Concepcion... What do you mean by that? How does it transcend the class? What we're saying is that these students seeking the relief that they do cannot vindicate those rights in the arbitral forum. In Concepcion, the majority was quite clear and said it affirmed the findings by the district court and by this court in the Laster case, both of which found that if an individual wireless customer went into arbitration, he or she could get all the relief they were seeking from the arbitrator and under certain conditions, double the right to recovery that they could otherwise get in court. They were better off in arbitration than they would be in a judicial forum. And that's repeated by Justice Scalia really throughout his opinion. So he came down to this demarcation. If you can vindicate your rights, your substantive rights, statutory rights in the arbitral forum, then you have to arbitrate those rights. If it's simply a question of incentive, in other words, somebody says, look, I'm not going to go into arbitration for $30. That's not a question of whether you could get the $30 if you went to arbitration. That's a question of there's not enough in it for me or whatever, which Justice Scalia then discussed in connection with the Discover Bank rule. But this case is different. This isn't the Discover Bank rule. We're talking about only a claim for a certain kind of relief that cannot be issued by an arbitrator, can't be enforced by the arbitrator. in its award the type of relief that you're asking for, and then the award would be registered by you in the district court. And to the extent that KeyBank refused to abide by it, then you could ask for appropriate enforcement relief from the district court. Because I don't know of any case, Judge Tallman, in which a public injunction kind of relief that we're seeking in this case could be issued by an arbitrator or ever has been issued by an arbitrator. In the enforcement provisions, Section 9 of the The question was why can't an arbitrator do it? The fact that you don't have a case that's done it before doesn't answer Judge Tallman's question. And I thought Ohio permitted that. Ohio may permit it, but it is not permitted in California. The Cruz and Broughton cases said that. You're making a different point. You were saying this is not, arbitrator can't do it. What do you think of the question whether California can put this limitation on it? We'll take care of that for you. But let's get past that question. I thought you were saying this is just not the kind of relief that an arbitrator can issue. It's just capable of issuing. I think that's the argument you're making. That is correct. And Judge Tallman said, why not? And I say, why not? So tell us, why not? Because, one, there's inherent conflict between a public injunction that benefits people who are not before the arbitrator and monetary relief in the form of $30 or $70 that was at issue in Concepcion and Conniff. But you're The FAA never contemplated You're not answering the question. I'm trying to. But you're not. The question is why can't he do it? Why can't an arbitrator issue this relief, which is the point you are making? And you just talk about something else all together. Because, as far as I understand arbitration, Judge Kaczynski, arbitrators make specific and discreet awards limited to the parties before them in that bilateral setting. They can learn. So my question, Counsel, Counsel, A to transfer black aid could be Counsel, excuse me, if I might, My question is whether or not the problem is you think they can't enter the award or you think they can't enforce the award? Both. Why can't they enter it? Because there's just an inherent conflict between that type of relief and an arbitral setting. I don't know of any cases Okay, but setting aside that they've never done it before because we've covered that ground now, why couldn't they? This is Judge Tallman's question. Well, if they did it, they'd probably be out of business in the future. At least for claims under the unfair competition law. Let me make two more points, if I may, before my time is up. One is that this question of If I may? You're now in negative numbers. If I may, Your Honor, may I make two points? Very quickly. One is that Judge Ginsburg, writing for the court in Preston v. Farrar, explicitly stated that state statutory rights as well as federal statutory rights are subject to the vindication doctrine. And that's written about particularly in Neila's amicus brief here. Second, under the opt-out doctrine, which you talked about, Judge McCune, and again, the Neila brief canvasses this argument. Based on the evidentiary record before the district court in this case, there was no meaningful opportunity to opt out. No student opted out. The school administrators were told, get them to sign it on the spot. They were pressured them into signing right then and there. The students in their declaration said they felt pressured and they said, if we don't sign this agreement, we're not going to get into this school and get the education that we bargained for. So for that reason, the opt-out provision is unconscionable. Thank you, Your Honor. There's no cooling-off period? Excuse me? There's no cooling-off period? 60 days. Isn't there a cooling-off period? There's a 60-day period. But if Your Honors will look at the... But that's really the full picture, right? You sort of left that part out. No, that is one provision in the clause. But courts have held, whether it's 10 days or 60 days or even beyond that, the question is all the facts that a court must consider. But when you're telling us all the facts, you have to include that fact, which you didn't. But anyway, your time is up. Your Honor, Judge Hurwitz asked if record references will take 10 seconds to provide them if it's helpful. Judge Hurwitz wanted to know if there's anything in the record as to KeyBank's continuing conduct. I'd point the panel... Do you want to speak into the microphone? I'm sorry, Judge. Paragraphs 27, 37, and 61 are the specific allegations of what KeyBank is continuing to do in this marketplace. It says unequivocally that they're not running these loans and there are no references to any other schools to answer the question put to my colleague. Those paragraphs are in what document? Yes, the Third Amendment Complaint, Judge. Thank you very much. So why did they get out of the business? Your Honor, they decided that vocational private lending was a problem. That indeed, there were schools that were causing losses to students. And this is before the record. They decided it was a problem to continue to write these loans. Well, they knew that. Why did they keep making payments when they knew there were problems? Well, Your Honor, it goes back to the analogy I provided earlier. These students got the education that they were entitled to get. They got all of the training. These two lead plaintiffs got every hour of training they were entitled to. It would be the same as if I went to law school, graduated, failed the bar exam and refused to pay my lender for letting me go to a good law school. That's what's going on here. And they've decided as a business proposition that these private student loans to these types of institutions are problematic. And they decided to terminate it. But there's no contention in the record that these folks got anything but the benefit of their bargain. Thank you. Mr. Sullivan, in answer to Judge Hurwitz, one of Judge Hurwitz's questions, you promised a citation to your complaint. Before you leave here, you will give a copy. You'll write it down on a piece of paper and give it to the clerk. Thank you. In case you're sorry, you will stand submitted.
judges: Kozinski, Pregerson, McKeown, Fletcher, Tallman, Callahan, Smith, Murguia, Christen, Watford, Hurwitz